IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FE CONSULTING LLC, | |
| Plaintiff, | |
| v. | Civil Action File No. |
| CHEMISA, S.A. de C.V., | _____ |
| Defendant. | |

## FE CONSULTING LLC'S VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AGAINST DEFENDANT CHEMISA S.A. de C.V.

FE Consulting LLC ("FE Consulting") brings this Complaint for Damages and Equitable Relief (this "Complaint") against Defendant Chemisa, S.A. de C.V. ("Chemisa"), showing the Court as follows:

### Parties

1.

FE Consulting, which at times operates under the tradename FE Fabrication, is a Georgia limited liability company, with its principal place of business at 4444 Marchbolt Court, Peachtree Corners, Georgia 30092.

2.

Chemisa is a stock corporation formed under the laws of the United States of Mexico, which operates from its principal corporate office with an address at Dolores Jimenez y Muro No. 22, Periodista, Miguel Hidalgo 11220, Ciudad de México, and also from its manufacturing facility with an address at Circuito Balvanera No. 20, Fracc., Industrial Balvanera, Corregidora, 76908 Queretaro, Mexico.

3.

In accordance with Fed. R. Civ. P. 4(f)(1), Chemisa may be served with process under the Hague Convention.

**Jurisdiction and Venue**

4.

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2), because the amount in damages incurred by FE Consulting due to Chemisa's acts and omissions exceeding the sum or value of $75,000, exclusive of interest and costs, and because there is complete diversity between the parties, as FE Consulting is a citizen of the State of Georgia, U.S.A., and Chemisa is an alien corporation and subject of the United States of Mexico.

5.

This Court has personal jurisdiction over Chemisa due to its transaction of business with FE Consulting as a Georgia limited liability company in the State of Georgia, and its acts and omissions constituting breaches of contract and torts committed within this State.

6.

Venue is proper in this Court under 28 U.S.C. § 1391 as Chemisa's acts and omissions occurred within this federal judicial district, and because as Defendant, Chemisa is subject to personal jurisdiction.

**Nature of the Action**

7.

This action arises from breaches of contract and fraud committed by Chemisa against FE Consulting, relating to project being constructed and completed in the United States.

**Statement of Facts**

8.

FE Consulting assists customers that have specialized steel fabrication needs for various types of projects.

9.

A number of partners work with FE Consulting to help engineer,
design, plan and fabricate machines, parts and objects in response to a given
customer's project-needs.

10.

One customer entered into an agreement with FE Consulting (the
"Customer Contract") concerning the fabrication of several process vessels for
the customer's new facility, which is being constructed in the United States
(the "Project").

11.

Under the Customer Contract, FE Consulting had a set amount of time
to complete the Project.

12.

The Customer Contract specified liquidated damages of $1,500 per day
for 30 days, $3,000 per day for next 30 days, and then $4,500 per day for any
late delivery of the Project, pursuant to the terms of the Customer Contract
and any defenses that FE Consulting may have in that regard.

13.

The Project was to be divided between initial engineering drawing
phase, to be followed by a purchase order for the process vessels.

14.

Chemisa, which had worked with FE Consulting on a prior matter for another of FE Consulting's customers, transmitted to a proposal for the Project FE Consulting.

15.

Chemisa knew and was informed that FE Consulting was a Georgia limited liability company that operated in the State of Georgia and the United States, and that the Project was for a U.S. customer and for a U.S. build site.

16.

On or about this time, FE Consulting informed Chemisa that the Project was very time sensitive, and that it was critical that the process vessels Chemisa was tasked with fabricating be received on the customer's building site as early as possible, so the customer could commence its construction activities.

17.

FE Consulting also disclosed that it was subject to the possibility liquidated damages under its Customer Contract if delivery was not timely performed.

18.

Over the course of negotiations between Chemisa and FE Consulting, Chemisa represented to FE Consulting that it had the required capacity, skills and capabilities, access to materials, vendor relationships, and workforce sufficient to timely perform the Project, to schedule, on budget.

19.

Subsequently, Chemisa and FE Consulting negotiated and entered into an Early Works Agreement dated January 8, 2021 (the "EWA"). A true and complete copy of the EWA is attached and incorporated as Exhibit A.

20.

Pursuant to the EWA, Chemisa issued Invoice Nos. CEM000707N30FB529 and CEM000707N30FB530 for engineering design work for the process vessels in the initial amount of $98,000, and also Invoice Nos. CEM000707N30FB531 and CEM000707N30FB532 for critical materials in support of the Project in the amount of $359,743.84. Copies of the Invoices are attached and incorporated as Exhibits B, C, D and E to this Complaint.

21.

FE Consulting fully paid Invoice Nos. CEM000707N30FB529, CEM000707N30FB530, and CEM000707N30FB532 on or about the date it executed the EWA.

22.

Following Chemisa's completion of engineering design work for the process vessels and of associated plans and drawings, Chemisa issued Invoice Nos. CEM000707N30FB534 and CEM000707N30FB535 in the total amount of $98,000, which constituted the balance due for that work. True and complete copies of the Invoices are respectively attached and incorporated as Exhibits F and G to this Complaint.

23.

FE Consulting fully and promptly paid Invoice Nos. CEM000707N30FB534 and CEM000707N30FB535.

24.

Following Chemisa's completion and engineering and design services for the process vessels, including associated plans and drawings, Chemisa issued Invoice Nos. CEM000707N30FB534 and CEM000707N30FB535 in the total amount of $98,000, which constituted the balance due for Chemisa's engineering design work. The amounts FE Consulting paid in regard to Chemisa's Invoices attached as Exhibits B through G are the "Initial Payments."

25.

Pursuant to the EWA, FE Consulting and Chemisa subsequently entered into Purchase Order No. 2020006.2-1, dated February 8, 2021 (the "P.O."), which further incorporated separate Terms and Conditions (the "Terms & Conditions"). A true and complete copy of the P.O., including Terms & Conditions, is attached and incorporated as Exhibit H.

26.

The P.O. totaled to $1,501,213.97, with payment to be made in discrete installments as Chemisa ordered materials and completed work.

27.

Under the EWA and P.O., Chemisa agreed that time was "of the essence" in its performance of the Project.

28.

Chemisa agreed to that it would complete and deliver the subject process vessels, fully finished and conformed to the engineering and design drawings, within 16 weeks.

29.

Chemisa therefore committed to an original delivery date set for the end of May, 2021.

30.

Chemisa also committed to documenting its work for FE Consulting, including weekly and monthly updates and periodic pictures confirming the status of the work.

31.

Pursuant to the P.O. and to commence work and order additional materials, Chemisa issued Invoice Nos. CEM000707N30FB536 CEM000707N30FB537FE, in the total amount $194,863.16. True and complete copies of the Invoices are respectively attached and incorporated as Exhibits I and J to this Complaint.

32.

FE Consulting fully and promptly paid Invoice Nos. CEM000707N30FB536 and CEM000707N30FB537FE.

33.

Chemisa further issued Invoice Nos. CEM000707N30FB544 and CEM000707N30FB545, attached and incorporated as Exhibits K and L to this Complaint, in the total amount of $66,831.63, for further engineering design changes.

34.

FE Consulting promptly and fully paid Invoice Nos.
CEM000707N30FB544 and CEM000707N30FB545. FE Consulting's
payments in regard to Chemisa's Invoices documented at Exhibits H through
K are the "Progress Payments."

35.

After some delay necessitated by complications experienced by the
customer, the parties agreed to a four-week extension to Chemisa's
performance of the P.O., which Chemisa indicated was sufficient to complete
its work.

36.

Chemisa therefore committed to a revised delivery date set for the end
of August, 2021.

37.

Thereafter, Chemisa repeatedly represented to FE Consulting that it
was performing the P.O. on schedule, on time, and on budget.

38.

For example, Chemisa issued progress reports to FE Consulting,
including on May 19, 2021; May 26, 2021; June 15, 2021; June 16, 2021; July
8, 2021; July 14, 2021, July 21, 2021.

39.

These reports represented Chemisa as being on time, on schedule, and on budget for the completion of its work pursuant to the P.O.

40.

Chemisa repeated these representations to FE Consulting in verbal and written email communications made on or about the time that Chemisa issued its reports.

41.

For example, on July 12, 2021 Chemisa emailed a set of photographs to FE Consulting and indicated that work was proceeding according to plan.

42.

On seeing the photographs, FE Consulting expressed immediate concern on the status of work, as they documented Chemisa's significant deviation from its own revised timeline for fabrication of the vessels.

43.

In response, Chemisa for the first time disclosed an alleged breakdown in one of its vendor's machines and indicated the possibility of yet more delay.

44.

Chemisa nonetheless represented that "[w]e do not expect any change to the overall supply dates" on the P.O., and that "the overall schedule is

11

being maintained and only some internal shifting is going on, which is very usual in fabrication."

45.

Chemisa emphasized that the parties had "agreed on final dates" only, and that any problem affecting "supply schedule for our subs" would not affect those final dates.

46.

Nonetheless, in a July 29, 2021 email to FE Consulting, Chemisa stated that its "achievable delivery date would be the 30th August," although left the door open to extending the delivery date to as late as "18th September."

47.

Chemisa also threatened that it would stop work as early as August 9, 2021, that delivery would be delayed even further, and that it would not dedicate the personnel, resources and times required for its performance of the P.O. unless FE Consulting paid Chemisa additional amounts beyond the amounts to which Chemisa had agreed and committed in the P.O.

48.

In an effort to salvage the Project, FE Consulting requested Chemisa not follow through on its threat and that the parties instead meet at

12

Chemisa's workshop to review the status of the Project and discuss Chemisa's performance.

49.

When FE Consulting and its customer reached Chemisa's workshop on August 10, 2021, they saw approximately 16 workers appearing to work on the Project.

50.

Chemisa also represented that it was fully prepared and able to perform and complete the Project in accordance with the EWA and P.O., provided FE Consulting met Chemisa's new financial terms.

51.

The number of workers on the workshop floor allegedly assigned to the Project was a surprise to FE Consulting since Chemisa had previously reported no more than eight workers at any one time as being dedicated to the Project.

52.

FE Consulting's initial review of the Project confirmed that Chemisa had not in fact substantially worked on or advanced the Project since late June or early July, 2021.

53.

In addition to multiple other problems, FE Consulting's initial review of the Project confirmed Chemisa had assigned insufficient personnel to work on the Project, with multiple jobs associated with the P.O. idling unperformed since the commencement of the Project.

54.

FE Consulting also determined that Chemisa had misrepresented the status of its performance of the P.O., which was in fact far behind schedule.

55.

As of August 10, 2021, Chemisa should have been nearing completion of the work it had promised to perform under the P.O., but Chemisa was in fact far from completion.

56.

Chemisa's August 10, 2021 demonstration at its workshop was nothing more than a ruse.

57.

As part of its investigation into the status of the P.O., and so it could inform and advise its customer on the best way forward, FE Consulting requested by email dated August 12, 2021, that Chemisa provide all paid receipts associated with Chemisa's performance of the P.O.

58.

FE Consulting informed Chemisa that time was of the essence and that these records were essential.

59.

Chemisa refused to provide the receipts that FE Consulting had requested.

60.

When FE Consulting subsequently requested that Chemisa provide an updated schedules and materials list related to the Project, Chemisa instead informed FE Consulting that it had reallocated its personnel to other accounts.

61.

Chemisa also attempted to falsely attribute its tardy and dilatory performance to FE Consulting and Chemisa's own vendors and suppliers that it had purportedly engaged in regard to the P.O.

62.

Chemisa eventually stated that it would have a proposal to FE Consulting by August 17, 2021, outlining its new terms and conditions for completing the P.O.

63.

On August 17, 2021, Chemisa had sent FE Consulting no proposal.

64.

Chemisa waited until August 26, 2021 to transmit its proposal, in the form of a purported "Project Acceleration Schedule."

65.

Under the Project Acceleration Schedule, Chemisa demanded that FE Consulting pay it an additional $654,559.56, plus an added $43,000 as 'idle time' money, to perform and complete the P.O.

66.

Chemisa gave FE Consulting just one day to accept Chemisa's Project Acceleration Schedule.

67.

FE Consulting pushed for more time and requested that Chemisa permit FE Consulting's designated inspector perform a more formal review of the Project to determine next steps and determine viability.

68.

Chemisa promised FE Consulting's inspector access to the workshop so it could review the Project and Project-associated records on August 26, 2021.

69.

When FE Consulting's inspector arrived at Chemisa's workshop, Chemisa denied the inspector access to the workshop and Project-related records.

70.

Chemisa promised that FE Consulting's inspector would have access to the workshop and Project-related records on August 30, 2021.

71.

When FE Consulting's inspector arrived at Chemisa's workshop the second time, the inspector was again denied access.

72.

Due to Chemisa's actions, FE Consulting's inspector was unable to verify the progress of the Project or Chemisa's performance of the P.O.

73.

Chemisa nonetheless represented to FE Consulting's inspector that it was working actively on the Project, with 18 dedicated personnel working 10 hour shifts.

74.

FE Consulting's inspector had no way of verifying the truth of Chemisa's claims and provided no documentation to support them.

75.

FE Consulting rejected Chemisa's purported Project Acceleration Schedule.

76.

By email dated August 30, 2021, FE Consulting urged Chemisa "to continue to do what is necessary to regain the lost time cause by Chemisa and its Vendors/contractors."

77.

In that same email, FE Consulting informed Chemisa of the number of days each vessel was late to its customer's build site and that according its customer, FE Consulting was now subject to liquidated damages under the terms of the Customer Contract.

78.

FE Consulting also informed Chemisa that due to Chemisa's conduct, it had lost the opportunity bid other work from its customer, and may have incurred other harm to its reputation and business relationships.

79.

Chemisa responded by email dated August 31, 2021, that it would do what it could "within our project related financial possibilities" for the

moment, although indicated its willingness to suspend all further performance of the P.O.

80.

Over the course of September, 2021, FE Consulting attempted on multiple occasions to cause and encourage Chemisa to perform the P.O. and to provide records and documentation concerning materials purchased, work completed, manhours worked, and other information.

81.

Chemisa has refused to provide the information FE Consulting has requested.

82.

Most recently, Chemisa raised its cost for performing and completing the P.O. to $720,000, exclusive of what Chemisa has demanded for alleged 'idle time' on the Project.

83.

FE Consulting has paid for and holds all right, title and interest in and to the finished works, works in progress, drawings, plans, designs, documents, and materials associated with or arising from the P.O. that are in Chemisa's possession or under its control, including as identified in Exhibits M, N, O and P to this Complaint.

## COUNT I
## Breach of Contract

### 84.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

### 85.

Under the EWA and P.O. Chemisa promised to a total price for the Project of $1,501,213.97.

### 86.

Chemisa agreed to complete the Project, and to deliver the process vessels, no later than the end of August, 2021, acknowledging that time is of the essence.

### 87.

Chemisa breached the EWA and P.O., including by failing to perform its obligations reasonably and in good faith, by demanding more funds to which it is not entitled in return for its performance of the Project, and by failing to meet the delivery deadlines to which it agreed.

### 88.

Chemisa's breaches of contract were and remain deliberate and in bad faith.

89.

In consequence of Chemisa's breaches of contract, FE Consulting has incurred and continues to incur damages.

90.

Because of Chemisa's breaches of contract, FE Consulting is entitled to and hereby demands damages, in an amount to be proven at trial.

## COUNT II
## Unjust Enrichment

91.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

92.

Chemisa accepted and received several hundred thousand dollars from FE Consulting, including Initial Payments and other amounts documented in this Complaint.

93.

Chemisa has been benefited by FE Consulting's funds and the materials, drawings, plans, designs, items, and other things of value it acquired by use of those funds, over which it exercises possession and control.

94.

It would be inequitable for Chemisa to retain the benefit of FE Consulting's funds and the things Chemisa acquired through the use of those funds without paying for and otherwise returning to FE Consulting the benefits it retains.

95.

In consequence of its acts and omissions, Chemisa has been unjustly enriched in amount to be proven at trial, for which FE Consulting makes demand and seeks damages.

**COUNT III**
**Restitution**

96.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

97.

Due to Chemisa's breaches of contract, FE Consulting is entitled to not less than restitution from Chemisa, sufficient to restore FE Consulting to the pre-contract status quo.

98.

Because of Chemisa's breaches of contract, FE Consulting is entitled to and hereby demands restitution, in an amount to be proven at trial.

## COUNT IV
## Specific Performance

99.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

100.

FE Consulting has substantially complied with and performed the EWA and P.O.

101.

The EWA and P.O. were fair and the compensation paid and due under them were adequate for Chemisa's performance.

102.

FE Consulting has performed, and is ready, willing and able to perform the EWA and P.O.

103.

Chemisa has stated that it will not perform its contractual obligations unless FE Consulting pays hundreds of thousands dollars more than the amount to which it committed and agreed in the EWA and P.O.

104.

At no time has Chemisa alleged or claimed a force majeure event as an impediment to its performance.

105.

FE Consulting therefore requests and order from this Court requiring Chemisa's complete and immediate performance of its obligations under the EWA and P.O., including prompt delivery to FE Consulting or its designated carrier of all associated finished works.

**COUNT V**
**Georgia Common Law Fraud**

106.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

107.

Chemisa represented to FE Consulting that it had the capacity, skills and capabilities, access to materials, vendor relationships, and workforce sufficient to timely perform the Project, to schedule, on budget.

108.

Chemisa's representations informed and became Chemisa's affirmative obligations under the EWA and P.O.

109.

These affirmative obligations and associated representations to FE Consulting are stated in the EWA, including first and second recitals, First Article (the subject vessels Chemisa committed to deliver), and Fifth Article (time is of the essence to Chemisa's performance, and that Chemisa would and could meet that requirement); and further, the P.O. and P.O. Terms & Conditions, including Section 1 (the subject vessels Chemisa committed to deliver), Section 3 (the price at which Chemisa committed to deliver the subject vessels), Section 5 (time is of the essence to Chemisa's performance), and Section 9 (Chemisa would warrant and guarantee the conformity and performance of the subject vessels to specifications).

110.

At the time that Chemisa entered into the EWA and P.O., it could not satisfy its obligations under them, and its associated representations were in each instance false.

111.

Chemisa made its misrepresentations to induce FE Consulting's entry in the EWA and P.O., and payment to Chemisa of the Initial Payments and Progress Payments.

112.

Chemisa's fraud included the misrepresentations that it made to FE Consulting in its multiple progress reports, including on May 19, 2021, May 26, 2021, June 15, 2021, June 16, 2021, July 8, 2021, July 14, 2021, and July 21, 2021, and further, in its associated verbal and written statements made to FE Consulting at or about the time of these progress reports.

113.

Chemisa further represented to FE Consulting that it had ordered materials using the Initial Payments and Progress Payments, and engaged contractors and vendors to fabricate and supply parts necessary to the Project.

114.

Despite FE Consulting's multiple requests, Chemisa has refused to provide FE Consulting substantial access to invoices, paid receipts, and other records and documents that would verify the materials it has ordered and contractors and vendors it has engaged purportedly utilizing FE Consulting's Initial Payments and Progress Payments.

115.

Despite FE Consulting's request, Chemisa has refused to provide a complete materials list for the Project or to permit inspection of the work performed on the Project to date.

116.

Instead, Chemisa has alleged that it is out of money for the Project and has demanded hundreds of thousands of dollars more from FE Consulting for the Project, beyond the amounts to which Chemisa agreed and committed in the EWA and P.O.

117.

Despite FE Consulting's request, Chemisa has also refused to release the Project or its associated works or materials, but has instead held them hostage unless and until its gets more money from FE Consulting.

118.

On information and belief, Chemisa has not used FE Consulting's Initial Payments or Progress Payments for the Project, whether in whole or in part, and does not have the materials and contractor and vendor relationships on which it has claimed to have spent FE Consulting's Initial Payment or Progress Payments.

119.

Chemisa's misrepresentations to FE Consulting were made deliberately or with reckless disregard for their truth, with the intention of inducing FE Consulting's reliance, entry into the EWA and P.O., and payment to Chemisa of the Initial Payments and Progress Payments.

120.

In the alternative, Chemisa's misrepresentations to FE Consulting were made negligently, constituting in each instance false information that it was foreseeable FE Consulting would rely upon as the party expressly intended as the recipient of that information.

121.

Chemisa's misrepresentations to FE Consulting were material to FE Consulting's decision to enter into the EWA and P.O. with Chemisa and also

FE Consulting's payment to Chemisa of the Initial Payments and Progress Payments.

122.

FE Consulting reasonably relied on Chemisa's misrepresentations at the time Chemisa made them, including due to the prior relationship between FE Consutling and Chemisa, which Chemisa exploited to its own improper gain.

123.

In consequence of the fraud that Chemisa perpetrated on FE Consulting, and as a proximate result, FE Consulting has been injured both economically and also in regard to its business reputation and relationships.

124.

While nonetheless affirming the EWA and P.O., FE Consulting is entitled to damages from Chemisa due to its fraud and deceit.

125.

Because of Chemisa's fraud upon FE Consulting, FE Consulting is entitled to and hereby demands damages, in an amount to be proven at trial.

**COUNT VI**
**Conversion**

126.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

127.

Despite requests from FE Consulting that Chemisa release the works, works in progress, materials, and Project-associated contracts, documents and records for which it has paid, Chemisa has refused to do so.

128.

Chemisa is also in possession of and has refused to return portions of the Initial Payments and Progress Payments that remain unspent or that Chemisa has wrongfully wasted and dispersed contrary to its obligations.

129.

Chemisa improperly and contrary to law retains possession of the works, works in progress, materials, and Project-associated contracts, documents and records that are and constitute FE Consulting property, and also portions of the Initial Payments and Progress Payments, to which in each instance FE Consulting has immediate right of possession.

130.

Because of Chemisa's conversion of FE Consulting's Property, FE Consulting has and continues to be harmed, and for which FE Consulting seeks and order requiring Chemisa's immediate release and delivery of such property or, to the extent such property is destroyed or in fact never existed, the return of associated funds paid to Chemisa by FE Consulting.

**COUNT VII**
**Constructive Trust**

131.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

132.

Chemisa's acts of fraud, unjust enrichment and conversion have resulted in Chemisa, by its own representation, being in possession of significant works, works in progress, materials, contracts, documents and records associated with and arising from the Project, which possession is wrongful and unlawful.

133.

Chemisa is also in wrongful and unlawful possession, whether directly or indirectly, of portions of the Initial Payments and Progress Payments.

134.

In consequence, FE Consulting requests that the Court impose a constructive trust over the works, works in progress, materials, contracts, documents and records associated with and arising from the Project, and also Initial Payments and Progress Payments that remain or to which Chemisa otherwise has no right.

## COUNT VIII
## Accounting

135.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

136.

Chemisa has failed and refused to provide records and documents sufficient to document its use and expenditure of the Initial Payments and Progress Payments.

137.

Chemisa has also made false representations concerning its use of FE Consulting's Funds and has otherwise failed and refused to provide FE Consulting the information it requires to validate the use of its funds.

138.

Chemisa remains the only party capable of determining the use and recipients of the Initial Payments, Progress Payments, and other amounts that FE Consulting has paid in regard to the Project.

139.

Accordingly, FE Consulting requests that the Court order an accounting to be performed by an independent third-party expert, within this Federal District, at Chemisa's sole cost and expense.

## COUNT XI
## Abusive Litigation

140.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

141.

FE Consulting seeks attorney fees and costs of action under O.C.G.A. §§ 9-15-14, 13-6-11 because Chemisa's claims and defenses in regard to this action lack substantial justification and are substantially frivolous, groundless and vexatious.

142.

Moreover, and due to the reasons stated, FE Consulting seeks attorney fees and costs of action under Fed. R. Civ. P. 11.

143.

Because Chemisa has acted in bad faith, been stubbornly litigious, and forced FE Consulting to incur unnecessary trouble and expense, FE Consulting is entitled to, seeks and demands attorney fees in an amount to be proven at trial.

## COUNT IX
## Exemplary Damages

144.

FE Consulting incorporates and realleges by this reference each of the foregoing paragraphs of this Complaint.

145.

Chemisa has acted with specific intent to cause harm to FE Consulting.

146.

Due to Chemisa's willful misconduct, malice, fraud, wantonness, and oppression in regard to FE Consulting, and entire want of care, FE Consulting is entitled to and hereby seeks and demands punitive damages in accordance with O.C.G.A. § 51-12-5.1 and other provisions of Georgia law.

WHEREFORE, Plaintiff FE Consulting LLC, prays that:

(a)     This Complaint is filed and served on Chemisa according to law;

(b)     This Court subject to trial on all issues so triable;

(c)     This Court award FE Consulting compensatory damages against Chemisa on each claim and cause of action sated in this Complaint in an amount to be proven at trial;

(d)     This Court enter an order imposing on Chemisa the obligation of specific performance of its contractual obligations under the EWA and P.O.;

(e)     The Court enter an order requiring an accounting related to the Project to be performed by a third-party expert paid for exclusively by Chemisa;

(f)     This Court enter an order imposing a constructive trust over the res in Chemisa's possession resulting from Chemisa's fraud and unjust enrichment as committed against FE Consulting;

(g)     This Court award FE Consulting attorney fees and costs of action under Fed. R. Civ. P. 11(b), (c), and O.C.G.A. §§ 9-15-14, 13-6-11;

(h)     This Court award FE Consulting punitive and exemplary damages against Chemisa;

(i)     This Court award FE Consulting prejudgment interest; and

(j)     This Court award FE Consulting such other and further relief as

this Court deems just.

Respectfully submitted September 28, 2021.

<u>/s/ Simon Jenner</u>
Simon Jenner
Georgia Bar No. 142588
simon.jenner@bakerjenner.com
Richard J. Baker, Esq.
Georgia Bar No. 033879
rick.baker@bakerjenner.com
Adam P. Ford, Esq.
Georgia Bar No. 355079
adam.ford@bakerjenner.com
Baker Jenner LLLP
210 Interstate N. Parkway, SE, Ste. 100
Atlanta, Georgia 30339
Telephone: (404) 400-5955
*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that the foregoing has been prepared in accordance with Local Rule 5.1(C), using Century Schoolbook, 13 point font. I further certify I have electronically filed, on the date stated below, the foregoing **FE CONSULTING LLC'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF AGAINST CHEMISA S.A. de C.V.** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to attorneys of record, as follows:

This September 28, 2021.

/s/ Simon Jenner
Georgia Bar No. 142588
Attorney for Defendant
Baker Jenner LLLP
210 Interstate North Parkway, SE
Suite 100
Atlanta, GA 30339
Tel: (404) 400-5955
E: simon.jenner@bakerjenner.com